UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRIS S. MAXWELL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DEUTSCHE BANK NATIONAL TRUST COMPANY, et al., <br><br> Defendants. | Case No. 13-cv-03957-WHO <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS** <br><br> Re: Dkt. No. 14 |

**INTRODUCTION**

Plaintiffs Morris and Shawn Maxwell ("the Maxwells") bring this action against defendants Deutsche Bank National Trust Company ("Deutsche"), OneWest Bank, FSB ("OneWest"), and Meridian Foreclosure Services ("MERS"), alleging violations of various California and federal consumer protection statutes, asserting a claim for an invalid transfer of a trust deed, and seeking declaratory and injunctive relief. Deutsche and OneWest move to dismiss the proceedings, arguing that the claims are barred by the doctrine of *res judicata*.

After considering the parties' briefs and the evidence presented, and for the reasons below, the Court concludes that the Maxwells' claims are barred by *res judicata* and GRANTS WITH PREJUDICE the Motion to Dismiss.[1]

**BACKGROUND**

**I.   FACTUAL BACKGROUND**

On January 5, 2007, the Maxwells borrowed $830,000 to refinance property located at 318

---

[1] The Maxwells moved on October 25, 2013, to continue the hearing on the Motion to Dismiss so that they could find counsel. Dkt. No. 22. They have been litigating with the defendants for more than four years in three courts, so a continuance on those grounds is DENIED. Given the litigation history and the applicability of *res judicata* to this matter, as discussed below, it would be futile in any event to bring in counsel at this late date.

Poinsettia Avenue, San Mateo, California. Compl. (Dkt. No. 1) Ex. 1 ¶ F. On the deed of trust securing the property, IndyMac Bank, FSB ("IndyMac"), is listed as the "Lender," First American Title Insurance Company is listed as the "Trustee," and MERS is listed as the "Beneficiary." Compl. ¶ 11.

In 2008, the Maxwells' real estate business "began a severe downturn." *Id.* ¶ 12. As a result, the Maxwells "found it difficult to make" timely mortgage payments. *Id.* Around March 2009, IndyMac Mortgage Services, a subsidiary of OneWest, began servicing the loan on the Maxwells' property. *Id.* ¶ 13. Subsequently, the Maxwells tried to get a loan modification from OneWest that would allow them to remain in their home and make timely payments, but OneWest informed them that in order to be considered for a modification, the Maxwells "would have to be in arrears on their mortgage payments." *Id.* ¶ 15.

After missing one mortgage payment, the Maxwells applied for loan modification with OneWest three times, and each application was denied. *Id.* Because the Maxwells "are sufficiently knowledgeable about the loan modification program known as the Home Affordable Modification Program," they "were certain, all the times that they applied, that they in fact . . . qualify for a loan modification." *Id.* ¶ 17. Despite the Maxwells' numerous inquiries, OneWest did not provide an explanation for its rejection of the Maxwells' applications. *Id.* ¶ 16.

In order for the Maxwells to be "genuinely considered for a loan modification," OneWest asked the Maxwells "to make two large payments in one month, totaling" $10,000, which the Maxwells did. *Id.* ¶ 18. However, the Maxwells still "were never granted a loan modification." *Id.* ¶ 19. Shortly after their $10,000 payment, OneWest's agent, Quality Loan Services ("Quality Loan"), "filed a Notice of Default, starting the foreclosure process." *Id.*

The Maxwells believe that OneWest "never intended to give them a loan modification," and that OneWest "was only making meaningless gestures in having [the Maxwells] provide information, and make very large payments, and submit applications for a loan modification." *Id.* ¶ 20.

"Subsequently, [the d]efendants filed a Notice of Trustee's Sale, . . . filed a Notice of Default [around] December 22, 2012, and . . . set a date for a Trustee's Sale for August 28, 2013."

*Id.* ¶ 21.

A trust run by Deutsche, "which purportedly holds the promissory note executed by" the Maxwells, was established under New York's trust laws on March 1, 2007. *Id.* ¶ 22. However, "[t]he controlling provisions of the Internal Revenue Code clearly state that an assignment into the trust must occur before the date it closes, or within 90 days of that date." *Id.* "In direct contravention" of the 90-day requirement, OneWest "attempted an 'assignment' into the subject trust more tha[n] three years after the closing date." *Id.* ¶ 23. The Maxwells allege that such an "assignment" is void from the outset and "conveys no interest whatsoever into the trust held by" Deutsche. *Id.* ¶ 24.

## II. PROCEDURAL BACKGROUND

### A. First Superior Court Action

On April 9, 2009, the Maxwells filed a complaint in the Superior Court of California, County of San Mateo ("Superior Court"), against Quality Loan, MERS, and IndyMac. *Maxwell v. Quality Loan Serv., et al.*, No. CIV482969 (Cal. Super. Ct. Apr. 9, 2009). In the complaint, the Maxwells brought causes of action alleging: (1) intentional misrepresentation of fact; (2) negligent misrepresentation of fact; (3) breach of fiduciary duty; (4) unfair debt collection practices; and (5) predatory lending practices in violation of California's Unfair Competition Law ("UCL"), CAL. BUS. & PROF. CODE §§ 17200, *et seq*. Super. Ct. Compl. ¶¶ 25-67. The Maxwells also sought to quiet title, and demanded declaratory relief, injunctive relief, and an accounting of the payments made by them. *Id.* ¶¶ 68-86.

On September 4, 2009, the Maxwells filed their first amended complaint ("Super. Ct. FAC"), which added the Federal Deposit Insurance Corporation (the "FDIC") as a defendant and alleged the following causes of action against all defendants: (1) fraud; (2) breach of fiduciary duty; (3) wrongful foreclosure; (4) breach of contract; (5) breach of the implied covenant of good faith and fair dealing; (6) violations of the UCL; (7) violations of California Civil Code section 2923.5 ("section 2923.5"), which requires, among other things, a mortgagee to consult with borrowers before initiating foreclosure proceedings; and (8) violations of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"), CAL. CIV. CODE §§ 1788, *et seq*., which

3

1   prohibits debt collectors and creditors from using deceptive, unfair, and abusive collection
2   methods.  Super Ct. FAC ¶¶ 31-87.  The Maxwells also sought to cancel the trustee's deed and to
3   quiet title to the property, and brought a negligence cause of action.  *Id.* ¶¶ 88-105.

4          On June 18, 2010, the Superior Court denied the Maxwells' request for a preliminary
5   injunction, finding that the Maxwells "fail[ed] to establish a reasonable probability of success
6   upon the merits of their claims based on . . . section 2923.5 and all other claims plead in the First
7   Amended Complaint."  Def.'s Request for Judicial Notice (Dkt. Nos. 15-1, 15-2) ("RJN") Ex. 10
8   at 1-2.[2]

9          On March 4, 2011, the Maxwells filed a second amended complaint ("Super. Ct. SAC")
10  against OneWest, Quality Loan and the FDIC, alleging:  (1) fraud; (2) breach of contract; (3)
11  breach of the implied covenant of good faith and fair dealing; (4) violations of section 2923.5; (5)
12  violations of the Rosenthal Act; (6) violations of the UCL; (7) violations of California Business
13  and Professions Code sections 17045 (which prohibits secret payments or allowances of
14  "unearned discounts" that injure "a competitor" and "tend[] to destroy competition"), 17049
15  (which prohibits "locality discrimination and sales below cost"), and 17051 (which prohibits
16  contracts that violate the statute); (8) negligent interference with prospective economic relations;
17  and (9) breach of fiduciary duty.  Super. Ct. SAC ¶¶ 32-78, 85-162.  The Maxwells also sought to
18  cancel the trustee's deed to the property.  *Id.* ¶¶ 79-84.

19         In response to the SAC, OneWest filed a demurrer, and the Superior Court sustained it
20  with leave to amend on all of the Maxwells' claims except for the section 2923.5 claim.  RJN Ex.
21  11 at 1.  The dismissed claims were not permitted because the Superior Court found that the
22  Maxwells "fail[ed] to state a cause of action."  *Id*.  The section 2923.5 claim was allowed because
23  OneWest only contacted the Maxwells "to request [their] mortgage," and "inform[] them that loan
24  modifications were not possible at the time," rather than for the purposes outlined in California
25  Civil Code section 2923.5(a)(2), *id.*, which requires mortgage servicers to "contact the borrower . .

---

[2] The defendants filed a Request for Judicial Notice of a number of documents from the Maxwells' other cases. Dkt. No. 15.  Because court documents are materials appropriate for judicial notice, the request is granted.  *Trigueros v. Adams*, 658 F.3d 983, 987 (9th Cir. 2011).

. in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure." Thus, the Maxwells' surviving claim "allege[d] a violation of . . . section 2923.5." *Id*.

On July 7, 2011, the Maxwells filed a third amended complaint ("Super. Ct. TAC")[3] against OneWest, Quality Loan, and the FDIC.[4] RJN Ex. 12 at 1. The TAC asserted: (1) violations of section 2923.5; (2) invalid assignment of trust deed; (3) illegal assignment of trust deed; (4) promissory estoppel; (5) intentional misrepresentation of fact; (6) negligent misrepresentation of fact; and (7) right to declaratory relief. *Id*. ¶¶ 25-66. OneWest filed a demurrer to the TAC on August 9, 2011, and, on December 10, 2011, the Superior Court sustained OneWest's demurrer on the Second through Seventh Causes of Action without leave to amend because the Second and Third Causes of Action failed to "state legally recognized claims"; the Fourth Cause of Action was not supported by facts "showing detriment resulting from reliance"; the Fifth and Sixth Causes of Action "fail[ed] to allege specific facts"; and the Seventh Cause of Action "alleges that the controversy is whether [the Maxwells] have a right to pursue foreclosure," which, "as a matter of law, [is] not appropriate for declaratory relief." RJN Ex. 13 at 2. For the same reasons, on April 16, 2012, the Superior Court also sustained Deutsche's demurrer on the Second through Seventh Causes of Action without leave to amend. RJN Ex. 15 at 2. Again, only the section 2923.5 cause of action remained.

On February 24, 2012, the Superior Court denied the Maxwells' ex parte motion for an order to prohibit and restrain OneWest from proceeding with the foreclosure sale because the Court had already denied the Maxwell's request for a preliminary injunction in June 2010. RJN Ex. 14 at 1. Despite this, the Maxwells filed three other motions for preliminary injunctions, all of which were either withdrawn by the Maxwells or denied by the Superior Court "for failure to comply with California Code of Civil Procedure section 1008[, which establishes the procedure for reconsidering court orders,] and failure to demonstrate a likelihood [the Maxwells] will

---

[3] The Maxwells erroneously titled this pleading "Second Amended Complaint."
[4] Although Deutsche was not identified as a defendant in the TAC's caption, it was identified as a defendant throughout the text of the TAC. *See, e.g.*, RJN Ex. 12 ¶¶ 2, 29-32.

prevail." RJN Ex. 19 at 2; *see also* RJN Exs. 16-18. Subsequently, the Maxwells filed a petition for a writ of mandate with the California Court of Appeals, which was summarily denied. RJN Ex. 20 at 1.

On August 24, 2012, the Maxwells dismissed their first Superior Court action without prejudice. RJN Ex. 21 at 1.

### B. United States Bankruptcy Court Action

On June 28, 2012, Morris Maxwell filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Northern District of California ("Bankruptcy Court"). RJN Ex. 22.

On August 27, 2012, two days before dismissing the first Superior Court action, Morris Maxwell filed a complaint in Bankruptcy Court, initiating an adversary proceeding against OneWest, Deutsche, and Quality Loan. RJN Ex. 23 at 1. This complaint alleged: (1) violations of the federal Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601, *et seq*.; (2) fraudulent claim of valid trustee assignment; (3) fraudulent claim of ownership of trust deed; (4) intentional misrepresentation of fact; and (5) negligent misrepresentation of fact. RJN Ex. 23 ¶¶ 30-61. The complaint also sought declaratory relief. *Id.* ¶¶ 62-69.

On December 11, 2012, the Bankruptcy Court dismissed Maxwell's claims with prejudice. RJN Ex. 25 at 2. The Bankruptcy Court held that Maxwell's TILA claim was time-barred and that because the remaining claims "are essentially identical to those raised in and denied by the state court," the remaining claims were barred by *res judicata* and collateral estoppel. *In re Maxwell*, No. 12-31917-DM, 2012 WL 5943137, at *3-6 (Bankr. N.D. Cal. Nov. 27, 2012). On December 12, 2012, the Bankruptcy Court dismissed Maxwell's Chapter 13 case. RJN Ex. 29 at 2.

On December 21, 2012, Maxwell appealed the Bankruptcy Court's decision to the United States Bankruptcy Appellate Panel of the Ninth Circuit ("BAP"), RJN Ex. 26 at 8, and, on April 8, 2013, he filed a motion with the BAP requesting a stay pending appeal to enjoin the trustee's sale, RJN Ex. 29 at 2. The BAP denied that motion, *id*., and later dismissed the appeal as moot because "no effective relief [could] be granted by way of appeal," as Maxwell's "state court action has been dismissed, the underlying Chapter 13 case has been dismissed, and the property at issue has been sold via foreclosure sale," RJN Ex. 34 at 2.

### C. Second Superior Court Action

On April 16, 2013, the Maxwells filed their second action in the Superior Court of California, County of San Mateo, against Deutsche and OneWest, claiming: (1) violations of section 2923.5; (2) violations of California Civil Code section 2923.55 (which establishes the requirements that must be met before mortgagees or other actors may record a notice of default); (3) injunctive relief under California Civil Code section 2924.12 (allowing for an action for injunctive relief "[i]f a trustee's deed upon sale has not been recorded"); and (4) fraudulent execution of a trust deed. RJN Ex. 30 at 7-21.

The Superior Court again denied the Maxwells' motion for a preliminary injunction. *Maxwell v. Deutsche Bank Nat'l Trust Co., et al.*, No. CIV521169 (Cal. Super. Ct. June 6, 2013). It also sustained the defendants' demurrer as to all causes of action without leave to amend, holding, among other things, that the Maxwells' challenge to the deed of trust assignment was barred by *res judicata* because "the gravamen of the claim is the same" as that alleged in Maxwells' "prior actions"—specifically, "that there is something allegedly deficient about the assignment, which affects the chain of title, thereby depriving [Deutsche] its beneficial interest in the property." RJN Ex. 32 at 2.

The Maxwell's second Superior Court action is pending, with a hearing scheduled for December 3, 2013, on an order to show cause why their case should not be dismissed.

### D. Third Superior Court Action

On September 10, 2013, the Maxwells filed a third action in Superior Court against Deutsche, OneWest, and MERS, claiming: (1) wrongful foreclosure; (2) right to quiet title; (3) slander of title; and (4) right to cancellation of various instruments used in the foreclosure process. *Maxwell v. Deutsche Bank Nat'l Trust Co., et al.*, No. CIV524067 (Cal. Super. Ct. Sept. 10, 2013). The defendants have filed a demurrer, which is pending. *Id.*

### E. The Present Action

On August 26, 2013, the Maxwells filed the present action against Deutsche, OneWest, and MERS, claiming: (1) violations of the UCL; (2) void assignment of deed trust; (3) violations of California's Consumer Legal Remedies Act ("CLRA"), CAL. CIV. CODE §§ 1750, *et seq.*, which

prohibits unfair or deceptive business practices; and (4) violations of the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, *et seq.*, which prohibits abusive debt collection practices, as well as violations of the federal Home Ownership and Equity Protection Act ("HOEPA"), 15 U.S.C. § 1673, which mandates certain disclosures and restrictions on lenders of high-cost loans. Compl. ¶¶ 25-41. The Complaint also seeks declaratory relief against all defendants. *Id.* ¶¶ 42-49.

On August 27, 2013, the Maxwells moved that that the Court issue an ex parte temporary restraining order to require the defendants to stay foreclosure proceedings scheduled for August 28, 2013. Plaintiffs' Ex Parte Motion for a Temporary Restraining Order ("Motion for TRO") (Dkt. No. 4) at 2. That same day, the Court denied the Motion for TRO because the Maxwells neither "show[ed] a likelihood of success on the merits" nor "explain[ed] . . . how what they have alleged is sufficiently different from their prior lawsuits such that the plaintiffs are now likely to succeed on the merits or that the balance of equities tips sharply in their favor." Order Denying Motion for TRO (Dkt. No. 8) at 2. The property was sold to a third party at a trustee's sale on August 28, 2013. Mot. to Dismiss (Dkt. No. 14) at 3.

On September 17, 2013, OneWest and Deutsche filed this Motion to Dismiss the Maxwells' Complaint. The Maxwells did not file an opposition.

## LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party," *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008), drawing all reasonable inferences from those facts in the nonmoving party's favor. *Knievel v. ESPN*, 393 F.3d 1068, 1080 (9th Cir. 2005). A complaint may be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, a

8

complaint does not suffice "if it tenders naked assertions devoid of further factual enhancement." *Id*. (internal quotation marks and brackets omitted).

In addition, when a claim is grounded in fraud, Federal Rule of Civil Procedure 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). The purpose of Rule 9(b) is to give defendants sufficient notice of the alleged fraudulent conduct so that defendants can adequately defend against the allegations. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

## DISCUSSION

Defendants have moved to dismiss because the prior judgments of the Superior Court and the Bankruptcy Court have *res judicata* effect. They are correct.

The doctrine of *res judicata*, also known as claim preclusion, bars claims for relief when "there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003) (internal quotation marks omitted). It also applies to those claims which could have been litigated as part of the prior cause of action. *Clark v. Yosemite Cmty. Coll. Dist.*, 785 F.2d 781, 786 (9th Cir. 1986). A plaintiff "cannot avoid the bar of res judicata merely by alleging conduct by the defendant not alleged in his prior action or by pleading a new legal theory." *McClain v. Apodaca*, 793 F.2d 1031, 1034 (9th Cir. 1986).

When determining whether a judgment by a California court has *res judicata* effect, the federal Full Faith and Credit Act, 28 U.S.C. § 1738, requires a California federal court to apply the *res judicata* law of California to that judgment. *See San Remo Hotel, L.P. v. City & Cnty. of San Francisco*, 545 U.S. 323, 336 (2005) (finding that the Full Faith and Credit Act "has long been understood to encompass the doctrines of res judicata, or ‚claim preclusion," and collateral estoppel, or ‚issue preclusion'"); *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 (9th Cir. 1988) (holding that the Full Faith and Credit Act "requires federal courts to apply the *res judicata* rules of a particular state to judgments issued by courts of that state"). The application of *res judicata*

9

1  under California law focuses on the same three factors as the federal *res judicata* doctrine:
2  identity of claims; a final judgment on the merits; and privity between parties. *Boeken v. Philip*
3  *Morris USA, Inc.*, 48 Cal. 4th 788, 797 (2010). Each factor is considered below.

### A. Identity Of Claims

In determining whether a claim or cause of action is the same, California courts look to the primary rights theory, in which "the violation of a single primary right gives rise to but a single cause of action." *San Diego Police Officers' Ass'n v. San Diego City Emp.'s Retirement Sys.*, 568 F.3d 725, 734 (9th Cir. 2009) (internal quotation marks omitted). In other words, "if two actions involve the same injury to the plaintiff and the same wrong by the defendant[,] then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery." *Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983). "What is critical to the [primary rights] analysis is the harm suffered; that the same facts are involved in both suits is not conclusive." *San Diego Police Officers' Ass'n*, 568 F.3d at 734 (internal quotation marks omitted).

Federal courts consider four factors when determining whether there is an "identity of claims" between two lawsuits: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts." *Harris v. Jacobs*, 621 F.2d 341, 343 (9th Cir. 1980). The fourth of these factors "is the most important." *Costantini v. Trans World Airlines*, 681 F.2d 1199, 1202 (9th Cir. 1982).

Each of the four factors establishes that there is an identity of claims between this lawsuit and the earlier ones. Plaintiffs have unsuccessfully tried to establish the same rights and interests in two other courts. The factual allegations in the complaints are similar. They involve infringement of the same right and arise out of the same "transactional nucleus of facts" as those in the earlier cases, namely, the foreclosure proceedings initiated against the Maxwells and the Maxwells" unsuccessful efforts to prevent the sale of their home, which has already occurred.

Even though the Maxwells plead multiple theories of recovery, the same "primary right" is at stake in each action.

It does not matter to this analysis that the Maxwells now assert causes of action that were not asserted in the earlier cases, as "[r]es judicata bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action between the parties, where the previous action was resolved on the merits. It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought." *United States ex rel. Barajas v. Northrop Corp*, 147 F.3d 905, 909 (9th Cir. 1998) (citation omitted). The Maxwells could have asserted the "new" claims they bring now—that is, the claims related to the CLRA, FDCPA, and HOEPA—in their prior actions, but did not do so.

Accordingly, there is an identity of claims between those in this case and those previously asserted in the Superior Court and Bankruptcy Court proceedings.

### B. Final Judgment On The Merits

In the Maxwells" first and second state court actions, the Superior Court sustained the defendants" demurrers without leave to amend. "In California, a judgment entered after the sustaining of a general demurrer is a judgment on the merits, and, to the extent that it adjudicates that the facts alleged do not establish a cause of action, it will bar a second cause of action on the same facts." *Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993). The Bankruptcy Court also dismissed the Maxwells" claims with prejudice. In federal as well as California courts, "dismissal with prejudice is the equivalent of a final judgment on the merits, barring the entire cause of action." *Boeken*, 48 Cal. 4th at 793; *see also Hells Canyon Preservation Council v. United States Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005) ("Final judgment on the merits is synonymous with dismissal with prejudice") (internal quotation marks and brackets omitted).

In short, three of the Maxwells" prior cases have resulted in final judgments on the merits.

### C. Privity Between Parties

The parties in the present case are the same as those in previous cases. To determine privity, California "courts examine the practicalities of the situation and attempt to determine whether plaintiffs are sufficiently close to the original case to afford application of the principle of preclusion." *Armstrong v. Armstrong*, 15 Cal. 3d 942, 951 (1976) (internal quotation marks omitted). In federal and California courts, privity exists when the party involved is "so identified in interest with another that he represents the same legal right." *Zaragosa v. Craven*, 33 Cal. 2d 315, 318 (1949) (internal quotation marks omitted); *see also Tahoe-Sierra*, 322 F.3d at 1081 (stating that privity between parties exists when parties in both actions are identical or substantially identical, "that is, when there is sufficient commonality of interest") (internal quotation marks omitted). It is indisputable that there is privity between the parties here.

In sum, as the Discussion above shows, *res judicata* applies because there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties. As a result, there is no need to analyze the individual claims asserted by the Maxwells in this case, all of which could have been asserted earlier and most of which have been rejected by other courts.

### CONCLUSION

For the reasons above, the defendants" Motion to Dismiss is GRANTED WITH PREJUDICE.

**IT IS SO ORDERED**.

Dated: October 30, 2013

WILLIAM H. ORRICK
United States District Judge

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MORRIS S MAXWELL et al, | Case Number: CV13-03957 WHO |
| Plaintiff, | **CERTIFICATE OF SERVICE** |
| v. | |
| DEUTSCHE BANK NATIONAL TRUST COMPANY et al, | |
| Defendant. | |

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 30, 2013, I SERVED a true and correct copy of the attached, by placing said copy in a postage paid envelope addressed to the persons hereinafter listed, by depositing said envelope in the U.S. Mail.

Morris S. Maxwell and
Shawn R. Maxwell
318 Poinsettia Avenue
San Mateo, CA 94403

Dated: October 30, 2013

Richard W. Wieking, Clerk
By: Jean Davis, Deputy Clerk